UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| AMY C.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:19-cv-38 |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Amy C., on February 5, 2019. For the following reasons, the decision of the Commissioner is **AFFIRMED.**

*Background*

The plaintiff, Amy C., filed applications for Disability Insurance Benefits and Supplemental Security Income on August 28, 2015, alleging a disability onset date of December 31, 2002. (Tr. 17). Amy C. amended her alleged onset date to June 29, 2016. (Tr. 17). The Disability Determination Bureau denied Amy C.'s application initially on December 11, 2015, and again upon reconsideration on April 28, 2016. (Tr. 17). Amy C. subsequently filed a timely request for a hearing on June 9, 2016. (Tr. 17). A hearing was held on August 29, 2017, before Administrative Law Judge (ALJ) William D. Pierson, and the ALJ issued an unfavorable decision on February 28, 2018. (Tr. 17-31). Vocational Expert (VE) Scott B. Silver appeared at the hearing. (Tr. 17). The Appeals Council denied review making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3).

---

[1] To protect privacy, the plaintiff's full name will not be used in this Order.

Amy C. meets the insured status requirements of the Social Security Act through March 31, 2021. (Tr. 19). At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that Amy C. had not engaged in substantial gainful activity since June 29, 2016, the amended alleged onset date. (Tr. 19).

At step two, the ALJ determined that Amy C. had the following severe impairments: lumbar degenerative changes with spondylosis as well as mild multilevel cervical spondylosis, asthma, morbid obesity, and hearing loss. (Tr. 20). The ALJ found that the above medically determinable impairments significantly limited Amy C.'s ability to perform basic work activities. (Tr. 20).

Amy C. alleged, or the record contained evidence of, impairments that the ALJ found were not severe. (Tr. 20). The ALJ found that Amy C.'s hypothyroidism and sleep disorder did not impose significant limitations of function for any 12-month period. (Tr. 20). Similarly, the ALJ determined that Amy C. had a history of episodes of ear infections, sinusitis, tinea cruris, otitis media, and otitis externa which largely predated the amended alleged onset date. (Tr. 20).

Moreover, Amy C. alleged that she suffered from mental impairments. (Tr. 20). The ALJ indicated that there was no persuasive evidence within the medical record that Amy C. received any ongoing mental health treatment. (Tr. 20). The ALJ found that Amy C.'s provisional diagnosis of schizophrenia did not cause more than a minimal limitation in her ability to perform basic mental work activities, and therefore was non-severe. (Tr. 23). In making this finding, the ALJ considered the paragraph B criteria for mental impairments, which include four broad areas of mental functioning:

> understanding, remembering, or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself.

(Tr. 23). The ALJ found that Amy C. experienced mild limitations in understanding, remembering, or applying information; a mild limitation interacting with others; mild limitations concentrating, persisting, or maintaining pace; and mild limitations adapting or managing herself. (Tr. 23). The ALJ concluded that because Amy C.'s mental impairments caused no more than mild limitations in any of the functional areas they were non-severe. (Tr. 24).

At step three, the ALJ concluded that Amy C. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 24). The ALJ stated that he considered Amy C.'s obesity and its effects as required by SSR 02-1p. (Tr. 24).

After consideration of the entire record, the ALJ then assessed Amy C.'s residual functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity to perform a limited range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant is limited to lifting, carrying, pushing and pulling 10 pounds frequently and 20 pounds occasionally. The claimant can sit at least six hours in an eight-hour workday and stand and/or walk six hours in an eight-hour workday. The claimant is limited from concentrated exposure to excessive airborne particulate, dust, fumes and gases and excessive heat, humidity and cold such as when working outside or within a sawmill, boiler room, chemical plant, greenhouse, refrigerator or sewage plant or as might be experienced in working very closely with chemicals such as strong bathroom cleaners and floor waxes. The claimant should avoid work within close proximity to very loud noises (level V) such as a fire alarm more than occasionally.

(Tr. 24). The ALJ explained that in considering Amy C.'s symptoms he followed a two-step process. (Tr. 24). First, he determined whether there was an underlying medically determinable physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce Amy C.'s pain or other symptoms. (Tr. 25). Then he evaluated the intensity, persistence, and limiting effects of the

3

symptoms to determine the extent to which they limited Amy C.'s functioning. (Tr. 25). After considering the evidence, the ALJ found that Amy C.'s allegations concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 25). Specifically, the ALJ noted that the allegations were consistent with the record only in so far as they were reflected in the RFC. (Tr. 25).

At step four, the ALJ found that Amy C. was able to perform her past relevant work as a data entry clerk, packager/sorter, or driver. (Tr. 28). The ALJ determined that her past work did not require the performance of work-related activities precluded by the RFC. (Tr. 28). In the alternative, the ALJ found that considering Amy C.'s age, education, work experience, and RFC there were jobs in the national economy that she could perform, including routing clerk (53,000 jobs nationally), collator (464,000 jobs nationally), and assembler small products (277,000 jobs nationally). (Tr. 30). The ALJ determined that Amy C. had not been under a disability, as defined in the Social Security Act, from June 29, 2016, through the date of this decision, February 28, 2018. (Tr. 30-31).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014); *Bates v. Colvin*, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence."). Courts have

defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see Bates*, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported his findings with substantial evidence and if there have been no errors of law. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

Disability and supplemental insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. §§ 404.1520, 416.920**. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." **20 C.F.R. §§ 404.1520(b), 416.920(b)**. If she is, the claimant is not disabled and the evaluation process is over. If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. §§ 404.1520(c), 416.920(c)**; *see Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any

of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. **20 C.F.R. §§ 404.1520(e), 416.920(e)**. However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1520(f), 416.920(f)**; *see Biestek v. Berryhill,* 139 S. Ct. 1148 (2019) (upon the disability benefits applicant's request, vocational expert's refusal to provide the private market-survey data underlying his opinion regarding job availability, does not categorically preclude the expert's testimony from counting as "substantial evidence" but, instead, the inquiry is case-by-case).

Amy C. has requested that the court reverse the ALJ's decision and remand this matter for additional proceedings. In her appeal, Amy C. has argued that the ALJ erred by failing to include mental limitations in the RFC finding.

"The RFC is an assessment of what work-related activities the claimant can perform despite his limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see* **20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)** ("Your residual functional capacity is the most you can still do despite your limitations."); SSR 96-8p, at *2 ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her

capacity to do work-related physical and mental activities."). The RFC is based upon medical evidence—including statements from medical sources about what the claimant still can do—as well as "other evidence, such as testimony by the claimant or his friends and family." *Craft v. Astrue,* 539 F.3d 668, 676 (7th Cir. 2008); **20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).**

Amy C. contends that the ALJ erred by failing to include a mental limitation in the RFC that addressed the quality and quantity of her interactions with her supervisors, co-workers, and the public. The ALJ acknowledged that Amy C. alleged that she suffered from mental impairments. However, the ALJ found that her mental impairments were non-severe. In making this finding, the ALJ noted that there was no evidence in the medical record that Amy C. received any ongoing mental health treatment. (Tr. 20). Moreover, the ALJ weighed the opinions of Dr. Candace L. Martin, Dr. Amy D. Johnson, and Dr. Donna Unversaw. (Tr. 20-24).

Dr. Martin performed a consultative psychological evaluation on November 2, 2015. (Tr. 20). Following her clinical interview and examination, she provided Amy C. with a provisional diagnosis of schizophrenia. (Tr. 20). Dr. Martin opined that Amy C. likely would have trouble relating to her coworkers and supervisors due to unusual thought processing. (Tr. 21). Following Dr. Martin's examination, Dr. Johnson reviewed Amy C.'s records and provided an opinion regarding her mental functioning for the state agency at the initial determination level. (Tr. 21). She opined that Amy C. would have moderate limitations maintaining social functioning and moderate difficulties maintaining concentration, persistence, or pace. (Tr. 21). Dr. Johnson further opined that Amy C. had the mental capacity to understand, remember, and follow simple instructions, but that she should be restricted to work that involved brief, superficial interactions with fellow workers and the public. (Tr. 21). These findings were confirmed by Dr. Unversaw on reconsideration. (Tr. 21).

An ALJ must consider all medical opinions in the record, but the method of evaluation varies depending on the source. Medical opinions from treating sources may be given controlling weight in some circumstances. **20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).** For all other medical opinions, the ALJ assigns weight after considering the following factors: examining relationship; length of the treatment relationship and the frequency of examination; nature and extent of the treatment relationship; whether the medical opinion is supported by medical signs and laboratory findings; consistency with the record as a whole; specialization of the medical source; and any other factors that tend to support or contradict the medical opinion. **20 C.F.R. §§ 404.1527(c), 416.927(c).** The weight assigned to non-examining sources will depend on the degree to which they provide supporting explanations for their medical opinions, and the ALJ will evaluate the degree to which the opinions of non-examining sources consider all of the pertinent evidence in the claim, including medical opinions of treating and other examining sources. **20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).**

The ALJ found that Dr. Martin's opinions were inconsistent with Amy C.'s lack of mental health treatment or the observations of her other medical providers. (Tr. 21). The ALJ indicated that Amy C. had received no mental health treatment through a specialist. (Tr. 22). Also, the ALJ noted that in January and March of 2016 Amy C. had denied depression and reported only occasional anxiety. (Tr. 22).

Furthermore, the ALJ indicated that Dr. Martin's opinions were not well-supported by her own contemporaneous clinical observations. (Tr. 21). Dr. Martin opined that Amy C. likely would have trouble relating to her coworkers and supervisors due to unusual thought processing. (Tr. 21). Yet, she found during the consultative examination that Amy C. was anxious but with pleasant affect. (Tr. 21). Dr. Martin reported that Amy C. had marginal interaction but that she

engaged in good conversation, cooperated fully, and put for a good level of effort. (Tr. 21). Dr. Martin indicated that Amy C. did not articulate her speech well, yet she found that Amy C.'s conversation was logical, relevant, and coherent; her responses and receptive language skills were adequate; she could attend to tasks and follow instructions; and her attention and concentration were quite strong. (Tr. 21). Dr. Martin also reported that Amy C. showed signs of lower "social" intelligence. (Tr. 22). However, the ALJ noted that Dr. Martin neither reported a confirmed diagnosis of any condition, nor did she offer persuasive evidence of a confirmed medically determinable impairment. (Tr. 22). Therefore, the ALJ found that Dr. Martin's findings were less than supported. (Tr. 22). The ALJ also afforded little weight to the opinions of Drs. Johnson and Unversaw because they relied on Dr. Martin's report and similarly were not supported by the evidence within the medical record. (Tr. 21).

Amy C. contends that because Drs. Martin, Johnson, and Unversaw found that she was limited in her interactions with co-workers, supervisors, and/or public, the ALJ should have included limitations to that effect in the RFC. However, an ALJ is not required to rely solely on medical opinions to determine the RFC. *Schmidt v. Astrue,* 496 F.3d 833, 845 (7th Cir. 2007) (recognizing that an ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians). The final responsibility for deciding a claimant's specific work-related or RFC limitations is reserved to the ALJ. *See* **20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).**

Additionally, it is not the court's duty to reweigh the evidence. "This court evaluates the reasons listed for giving source opinions controlling weight, not the amount of weight to afford these opinions." *Joyce W. v. Berryhill,* 2019 WL 2353500, at *5 (N.D. Ind. 2019); *see* **Wright v. Commissioner,** 2018 WL 898117 at *2 (N.D. Ind. Feb. 15, 2018). Therefore, the court must

9

evaluate whether the ALJ provided sufficient support. Here, the ALJ followed the standards set forth in 20 C.F.R. §§ 404.1527, 416.927. The ALJ analyzed the medical opinion evidence and supported his determinations with substantial evidence from the record. Accordingly, the ALJ gave good reasons for discounting the medical opinions and minimally articulated his reasons.

Furthermore, the ALJ addressed Dr. Martin's provisional diagnosis of schizophrenia. The ALJ found that assuming the provisional diagnosis of schizophrenia established a medically determinable impairment, it did not cause more than minimal limitation on Amy C.'s ability to perform basic work activities. (Tr. 23). In making that finding, the ALJ considered the paragraph B criteria for mental impairments. The ALJ found that Amy C. had mild limitations in understanding, remembering, or applying information; a mild limitation in interacting with others; mild limitations in concentrating, persisting, or maintaining pace; and mild limitations adapting or managing herself. (Tr. 23).

The ALJ indicated that because the medically determinable mental impairments caused no more than "mild" limitation in any of the functional areas, they were non-severe. (Tr. 24). The ALJ acknowledged, at Step 2, that

> "[t]he limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis."

(Tr. 24). Accordingly, the ALJ found that Amy C.'s mental impairments did not warrant mental limitations in the RFC. Specifically, as argued by Amy C. limitations addressing the quality and

10

quantity of her interactions with supervisors, co-workers, and the public.

Amy C. correctly asserts that the ALJ must consider the limiting effects of *all* of a claimant's impairments, even those impairments that are not severe in determining the claimant's RFC. **20 C.F.R. §§ 404.1545(e), 416.945(e).** However, where the ALJ builds a logical bridge between the evidence and his decision to omit non-exertional mental limitations from the ultimate RFC finding, remand is not required. *E.g., **Keys v. Colvin**,* 2016 WL 447519, at *8 (N.D. Ind. Feb. 5, 2016), *aff'd sub nom. **Keys v. Berryhill**,* 679 F. App'x 477 (7th Cir. 2017) (although ALJ found mild limitations in concentration, persistence, and pace and social functioning at step two, remand not required where ALJ indicated that her step two finding was not a RFC assessment, gave great weight to opinions of the State agency psychological consultants that plaintiff did not have any severe mental impairments, and noted that plaintiff did not receive any treatment for mental impairments).

The ALJ has created a logical bridge from the evidence to his decision. The ALJ indicated that there was no persuasive evidence within the medical record that Amy C. received any ongoing mental health treatment. (Tr. 20). Moreover, Amy C. has not pointed the court to any additional evidence establishing mental impairments, other than the State agency examining and consulting opinions that the ALJ properly considered, as discussed above. Furthermore, Amy C. testified at the administrative hearing as to her physical symptoms that precluded her from working, but she did not testify that she could not work as a result of her alleged mental impairments.

Moreover, the ALJ in evaluating Amy C.'s symptoms determined that her allegations concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence. (Tr. 25). The ALJ noted that Amy C. worked at the substantial

gainful activity level in the third quarter of 2016 and worked on a part-time basis in January of 2017. (Tr. 25). Amy C. testified that her part-time job required her to check dry-cleaning in and out, iron laundry, and to sweep, vacuum, and mop. (Tr. 25, 46-49). She also testified that she cooked, cleaned, did laundry, went grocery shopping, washed dishes, vacuumed, swept, mopped, and drove. (Tr. 25, 286). The ALJ found that these activities "certainly indicate the wherewithal to interact with others; follow instructions and complete tasks; provide for others; socialize if needed; and sustain the focus and concentration required to maintain safe driving, and to interact with her environment and remember location and positioning while operating a motor vehicle, watching the road, and watching for others." (Tr. 25-26).

The court should read an ALJ's decision as a whole and with common sense. ***Suzanne M. v. Commissioner of Social Security***, 2018 WL 6817029, at *6 (C.D. Ill., 2018) (citing ***Rice v. Barnhart***, 384 F.3d 363, 369-70 n.5 (7th Cir. 2004) ("[I]t is proper to read the ALJ's decision as a whole . . . ."); ***Shramek v. Apfel***, 226 F.3d 809, 811 (7th Cir. 2000) (explaining that an ALJ's opinion is given "a commonsensical reading" during an analysis of the opinion for "fatal gaps or contradictions"). In reading the decision, it is clear that the ALJ considered both Amy C.'s severe and non-severe impairments. The ALJ articulated that he found there was no support for limitations beyond those that he assigned in the RFC. It is not for the court to reweigh the evidence. Overall, the ALJ supported his decision with substantial evidence and built a logical bridge from the evidence to his conclusion.

Based on the foregoing reasons, the decision of the Commissioner is **AFFIRMED**.

ENTERED this 31st day of January 2020.

/s/ Andrew P. Rodovich
United States Magistrate Judge